**Hyman SHICK, et al., Plaintiffs,**

**v.**

**FARMERS HOME ADMINISTRATION, et al., Defendants.**

**Civ. A. No. 83–1523–C.**

United States District Court, D. Massachusetts.

April 6, 1984.
On Motion for Stay May 9, 1984.

Shaprio & Grace, Carolyn Grace, Deborah Hiatt, Boston, Mass., for plaintiffs.

Asst. U.S. Atty. Joan Milstein, Boston, Mass., for defendants.

## MEMORANDUM

CAFFREY, Chief Judge.

This is a civil action brought by the plaintiffs, Hyman and Mona Shick, against

the Farmers Home Administration ("FmHA") and nine individual government officials. Plaintiffs seek to recover their family farm from the FmHA. They also seek damages against seven officials of the FmHA sued in their individual capacities.[1] In their five count amended complaint, plaintiffs allege that their property was taken in violation of the Consolidated Farm and Rural Development Act, the Agricultural Credit Act, 7 U.S.C. §§ 1921 *et seq.*, 7 U.S.C. § 1981a, and the Fifth Amendment to the United States Constitution. Plaintiffs also allege that the defendants' actions are subject to judicial review pursuant to 5 U.S.C. § 701 *et seq.*[2]

The case is before this Court on defendants' motions to dismiss. The FmHA moves to dismiss plaintiffs' amended complaint on the grounds that plaintiffs have failed to exhaust their administrative remedies. The seven defendants named in their individual capacities claim that plaintiffs have failed to state a claim against them which would subject them to liability in their individual capacities. All nine individual defendants move to dismiss the amended complaint to the extent that it names them in their official capacities. Finally, two of the individual defendants move for dismissal pursuant to Fed.R.Civ.P. 12(b)(2) for lack of personal jurisdiction.

Examination of the pleadings in this case reveals the following facts. Plaintiffs have owned and operated a 292-acre commercial dairy farm in Wayland, Massachusetts, since 1939. In December 1978, plaintiffs borrowed $1,250,000 from the John Hancock Mutual Life Insurance Co. ("John Hancock"), securing the loan by a real estate mortgage on the Shick farm. In February 1979, plaintiffs borrowed $400,000 from the FmHA pursuant to the Emergency Agricultural Credit Adjustment Act of 1978, 7 U.S.C. §§ 1961 *et seq.* In February 1980, plaintiffs borrowed another $100,000 from the FmHA pursuant to the Consolidated Farm and Rural Development Act, 7 U.S.C. §§ 1941 *et seq.* The federal loans were secured by security interests in the plaintiffs' farm junior to the first mortgage held by John Hancock, and by a first chattel mortgage on certain farm equipment and all livestock. Plaintiffs consolidated the federal loans in February 1980, agreeing to pay the FmHA $6,052 each month for eleven months and then $5,212 each month until the loans were paid off.

In May 1980, plaintiffs received thirty-day notice of the FmHA's decision to accelerate the consolidated federal loans on account of plaintiffs' "failure to protect the government's security property" and "failure to make required payments." Plaintiffs allege that, at the time they received the notice, they were not in default of any obligation to protect the government's security property or delinquent in their payments.

In June 1980, plaintiffs offered to compromise their debt to the FmHA by paying the agency the full fair market value of the security interest. The FmHA refused to compromise the plaintiffs' debt. After a hearing in June 1980, at which Hyman Shick was present, the District Director of the FmHA affirmed the initial decision to accelerate the notes and demanded immediate payment of the full amount due. In October 1980, the FmHA again affirmed the agency decision to accelerate the notes, this time citing "unauthorized disposal of security" as the reason.

Plaintiffs allege that in October 1980, as a direct result of the FmHA's actions, they were forced to file a voluntary debtor's petition under Chapter 11 of the Bankruptcy Act, 11 U.S.C. § 1101 *et seq.* In April

---

**1.** Plaintiffs appear to name John R. Block, Secretary of the United States Department of Agriculture, and Charles W. Shuman, Administrator of FmHA, as defendants only in their official capacities.

**2.** Count V of plaintiffs' amended complaint sets forth facts showing that the United States holds plaintiffs' property in a constructive trust for the benefit of the plaintiffs. Constructive trust is a *remedy*, not a cause of action. *See, e.g., Vigran v. Poelker*, 433 F.Supp. 168, 171 (E.D.Mo. 1977). The Court, therefore, will concern itself only with Counts I through IV.

1981, John Hancock gave notice of its intention to foreclose its first mortgage on the Shick farm. Soon thereafter, plaintiffs offered John Hancock the full face value of the mortgage ($1,250,000), but John Hancock refused because it claimed the actual indebtedness had grown to $1,900,000. Plaintiffs allege that, at the time of John Hancock's refusal to compromise, John Hancock was fully informed that the FmHA would pay John Hancock the full $1,900,000 claimed due on the Shick farm. On or about May 12, 1981, the Shick farm was auctioned at a public auction. The sole bidder was the FmHA and the FmHA bid and paid John Hancock $1,900,000 for the property. Plaintiffs allege that the fair market value of the farm at the time of the auction was substantially below $1,900,000. Defendants commenced eviction proceedings against plaintiffs on March 7, 1983, and on May 27, 1983, plaintiffs initiated this lawsuit.

The FmHA moves this Court to dismiss plaintiffs' claims for failure to exhaust administrative remedies. The doctrine of exhaustion of administrative remedies provides that judicial relief is inappropriate until prescribed administrative remedies have been exhausted. *See, e.g., Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–464, 82 L.Ed. 638 (1938); *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d 770, 774 (1st Cir. 1981). Plaintiffs recite in paragraph 50 of their amended complaint that they "have exhausted their administrative remedies." Yet, an examination of the facts set forth in the pleadings shows that the plaintiffs did not exercise their right to appeal the adverse decision by the District Director of the FmHA to the Area Coordinator in Washington, D.C. *See* 7 C.F.R. § 1900, Subpart B. Moreover, plaintiffs' counsel has conceded, both in oral argument to this Court and in her memorandum of law, that plaintiffs have not fully pursued the available administrative appellate procedure.

Plaintiffs argue that their failure to exhaust their administrative remedies should not bar judicial review by this Court because plaintiffs' say that their claims involve constitutional questions and issues of statutory interpretation. It is true, as plaintiffs assert, that exhaustion does not apply when constitutional questions are at issue. *See Califano v. Sanders*, 430 U.S. 99, 109, 97 S.Ct. 980, 986, 51 L.Ed.2d 192 (1977). Plaintiffs' amended complaint, however, does not present constitutional questions which would require this Court to waive the exhaustion requirement. Plaintiffs do not challenge the constitutionality of any aspect of FmHA agency procedure. *See Weinberger v. Salfi*, 422 U.S. 749, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975); *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Rather, plaintiffs' constitutional claims are no more than plaintiffs' conclusory assertion that FmHA procedures, as implemented in this case, violated plaintiffs' constitutional rights. This type of "constitutional" issue could have been avoided if plaintiffs had appealed their case within the agency, thereby giving the agency an opportunity to correct any errors it might have made in implementing its procedures. I therefore rule that plaintiffs' "constitutional" claims are such that the Court need not waive the administrative exhaustion requirement.

Another situation in which administrative exhaustion is not required is where the dispute involves a "pure matter of law." *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d at 774. Plaintiffs contend that exhaustion is not required in this case because "a principal issue is the interpretation of an agency's duty under a controlling statute," namely, 7 U.S.C. § 1981a. Plaintiffs assert that 7 U.S.C. § 1981a requires the FmHA to notify borrowers of the availability of the moratorium on repayment of FmHA loans. Plaintiffs further claim that the FmHA violated 7 U.S.C. § 1981a by failing to give the plaintiffs the required notice.

Based on the facts set forth in plaintiffs' amended complaint, the Court concludes that, though the interpretation of § 1981a *is* a question of law, the question is irrelevant to plaintiffs' case. The clear

language of § 1981a states that the moratorium provision applies when, "due to circumstances beyond the borrower's control, the borrower is temporarily unable to continue making payments of ... principal and interest when due ...." 7 U.S.C. § 1981a (Supp.1984). Paragraph 29 of plaintiffs' amended complaint alleges that the District Director of the FmHA affirmed the agency's decision to accelerate plaintiffs' notes, not on account of plaintiffs' failure to make payment, but, rather, on account of plaintiffs' "unauthorized disposal of security." Statements made by both parties in memoranda of law and in oral argument to this Court are consistent with this allegation and support a finding that plaintiffs were not delinquent in their payments at the time the decision to accelerate the notes was made. The record shows, therefore, that whether or not the FmHA is required to give notice of the § 1981a moratorium provision is not important to plaintiffs' case because they do not qualify for a loan deferral under that provision. I therefore rule that plaintiffs have not pleaded a question of law sufficient for the Court to set aside the administrative exhaustion requirement.

■ Plaintiffs argue that even if the exhaustion doctrine were applicable to this case the plaintiffs fall squarely within two exceptions to that doctrine: exhaustion is not required, first, where further administrative appeal would have been futile, and, second, where the actions of the administrative agency were clearly illegal. On the basis of the pleadings, the Court rules that neither exception has been shown to be applicable in this case. Plaintiffs' amended complaint contains a conclusory statement alleging that further administrative appeal would have been futile. Yet, plaintiffs plead no facts which form a basis for this statement. Plaintiffs also fail to support their argument that the FmHA's actions

were clearly illegal.[3] Plaintiffs challenge the FmHA's implementation of its procedures in their particular case. If this Court were to rule that the FmHA's alleged actions were clearly illegal in this case, then the Court would have to set aside the exhaustion requirement in every case alleging general misapplication of agency procedure. Such a ruling would certainly not be reasonable and is not warranted, much less required, in this case. For these reasons, I rule that plaintiffs do not bring themselves within either exception to the exhaustion doctrine.

Finally, plaintiffs argue that dismissal on exhaustion grounds is plainly inappropriate in this case. The Court of Appeals for the First Circuit has noted that the exhaustion requirement is appropriate when it "serves [the] interests of accuracy, efficiency, agency autonomy and judicial economy." *Ezratty v. Commonwealth of Puerto Rico*, 648 F.2d at 774. Given the facts of this case, the Court rules that administrative exhaustion is appropriate here. Further administrative review might well have resolved, or, at least, clarified, many or all of the issues in this case. Moreover, the absence of a fully-developed factual record compiled during administrative review makes judicial review at this time difficult. I rule, therefore, that plaintiffs should have exhausted their administrative remedies before bringing their claims to this court.

Because of the above rulings, there is no need to address the motion to dismiss filed by the individual defendants.

Order accordingly.

## ON MOTION FOR STAY

This is a civil action brought by the plaintiffs, Hyman and Mona Shick, against the Farmers Home Administration ("FmHA") and nine individual government officials. Plaintiffs seek damages and the recovery

---

**3.** In their memorandum of law, plaintiffs argue that the FmHA's actions were clearly illegal because the FmHA did not give the plaintiffs notice of the § 1981a moratorium provision— notice which several federal district courts have ruled is required by statute. *See, e.g., Curry v.*

*Block,* 541 F.Supp. 506 (S.D.Ga.1982). Because of § 1981a's lack of relevance to plaintiffs' claims as set forth in their amended complaint, the Court has essentially disregarded this argument.

of their family farm. On April 6, 1984, this Court allowed defendant FmHA's motion to dismiss for failure to exhaust administrative remedies. The complaint was dismissed as to all defendants. The case is presently before this Court on plaintiffs' motion for stay or injunction pending appeal, filed April 16, 1984,* and plaintiffs' offer to post bond, filed April 25, 1984.

■ Plaintiffs "are not, of course, entitled to a stay pending appeal without showing that their appeals have potential merit." *Providence Journal Co. v. Federal Bureau of Investigation*, 595 F.2d 889, 890 (1st Cir.1979). However,

> [w]here ... the denial of a stay will utterly destroy the status quo, irreparably harming [plaintiffs], but the granting of a stay will cause relatively slight harm to [defendants, plaintiffs] need not show an absolute probability of success in order to be entitled to a stay.

*Id.* In such cases, it is enough that "serious legal questions" are presented on appeal. *Id.*

■ The Court is reluctant to rule that plaintiffs have a substantial likelihood of success on their appeal of this Court's order of April 6, 1984. The Court recognizes, however, that the appeal in this case involves substantial legal questions. Moreover, I find that the irreparable harm plaintiffs would suffer were the stay not granted far outweighs any harm which granting the stay would inflict on the defendants. For these reasons, the Court rules that plaintiffs' motion for a stay pending appeal should be allowed.

■ Plaintiffs have offered to deposit with this Court a bond in the amount of $6,000. Plaintiffs assert that this sum is equal to the amount the FmHA claims it could obtain in rent for the dwelling units on the farm for the estimated period of the appeal. In its memorandum opposing plaintiffs' motion for a stay, the government cited several ways in which it says it

would be harmed should a stay be granted. Although the loss of residential rental income represents only one of several concerns the government expressed regarding a stay, the posting of a $6,000 bond will nonetheless mitigate any harm that might befall the government due to the stay. The Court therefore rules that plaintiffs should post with this Court a bond in the amount of $6,000.

Order accordingly.

---

* On that same date, plaintiffs filed a motion to reconsider. This motion, however, was withdrawn by plaintiffs on May 8, 1984.